If it pleases the court, this is an appeal from a summary judgment of non-infringement based on the district court's construction of the claim term or phrase, HINGEDLY ATTACHED TO SAID BACKPLATE. And that term or phrase is in the context of Claim 1, a limitation which reads, A COVER HINGEDLY ATTACHED TO SAID BACKPLATE FOR MOVEMENT BETWEEN OPEN AND CLOSED POSITIONS WITH RESPECT THERETO. The district court said HINGEDLY ATTACHED TO SAID BACKPLATE means CONNECTED BY A FIXED INTEGRAL CROSSBAR LOCATED ON THE BOTTOM EDGE OF THE COVER AND SPACED HOOK-LIKE MEMBERS ON THE BOTTOM EDGE OF BACKPLATE THAT SNAP OVER THE CROSSBAR TO INTERCONNECT THE BACKPLATE AND COVER. And the district court did that because they read the claim term in the context of the spec, which they're required to do under Phillips, and they concluded that the reference to the hinge several times talks about in a unique fashion, points out this is now a conventional hinge pin. And so why was that wrong or inappropriate? Well, first of all, it wasn't a disavowal of claim scope because a disavowal of claim scope requires a manifest expression that you have disavowed that scope. Well, the district court kind of construed this as pretty much of a disavowal because they pointed specifically to there is no conventional hinge pin as such. So referring to column 5 of the spec, they said that is a disavowal. I mean, I don't know what words would have been necessary, but the district court at least construed there is no conventional hinge pin as such to be a disavowal. Why is that wrong? Well, that's wrong because, first of all, you have to read the entire patent to construe the claim. If you read this patent, it has seven inventive facets, seven inventive features. It has nine independent claims, nine independent claims. Those nine independent claims address separately each of the inventive facets. Only one of the inventive facets is a hinge. And the other inventive facets are inventive separate and apart from whatever hinge you use. And from the get-go, these claims were filed using the identical language for eight of the nine claims. Eight of the nine independent claims all use exactly the same expressed language when referring to the hinge detachment. When they got to the issue of what was unique about this hinge, that was application claim 19, which was allowed as filed. It went into the detail of the hinge. It talks about the things that Judge Dowd then selected to say, well, every time you mention hinge in this patent, it's all this structure. That's not the case. A person of ordinary skill in the art reading this would say, wow, they've laid out for me seven features up front, and I've addressed them in the brief, seven features that are novel, that are unique, and that are patentable in this dispenser. And they have a patent application here with nine independent claims that serially address those features. Only one of those features was the hinge. And claim one, and the rest of the claims, the hinge is totally incidental and ancillary to the inventive feature being addressed. You can't just disregard that. Of course, when they went to talk about the hinge and the hinge aspect of the invention, they said, yeah, this is not a novel hinge now. Here's a hinge that we've got. And they talk about that. But anybody picking up this patent application, and these claims were part of the specification because they were original claims, they comprise a part of the specification as drafted, nobody would look at every time a hinge is mentioned in those claims and say, wow, it's the hook, and it's the crossbar, and it's the graph. Well, you're clearly wrong about nobody because at a minimum we've got the district court judge who construed it differently, right? Well, that's correct. And I disagree. I'm a special master for Judge Dowd. I have a lot of respect for him. He didn't get this right. He did not get this right. And he hates patent cases. That's the reason I'm a special master for him. But the bottom line is you've got to look at the whole patent. What did Gojo invent here? Gojo invented a dispenser that said, I'm going to get rid of the bag-in-the-box concept where I put in refills that are a bag and a box, and I'm going to put that into this dispenser. I'm just going to be able to put a bag in because of the way I construct the interior of the dispenser. Every claim here starts out with a backplate and a cover hingedly attached to said backplate, yada, yada, yada, which is de rigueur for every dispenser. Then it goes into what is inventive. You can't disregard that. What Judge Dowd did was he disregarded all of the other claims. There's no express disavowal of claim scope. The patent attorney was not a lexicographer here in saying, every time I say hinge, this is what I'm going to mean. He said, I've got a whole bunch of novelties. Indeed, that's what the spec indicates, right? I haven't done the ultimate search, but I think every time they say hinge, they do say, right? I'm looking, where are the references to hinge in the spec? There's column two, column four, and column five, correct? I'll accept that, yes. It seems to me, unless I'm missing something, I'm happy if you can point out that I'm incorrect, but it seems to me the only times when hinge is referenced in the spec, so tell me if I'm wrong, it's not just hinge in a book. It's a unique hinge structure. It's in a unique fashion. There is no conventional hinge pick. That's because it's talking about the hinge feature. Is there another reference to a hinge or not? No, but what you should do, Your Honor, is look at the prosecution history. When the examiner rejected claim one on the basis of prior art, it had that limitation in it. The examiner rejected it, 102, as being anticipated fully by a reference that doesn't even mention hinge, but once in the claim, I mean once in the spec, shows conventional hinge pins, and then in the claims, mentions it twice. The examiner, and the examiner didn't even mention hingely connected in his rejection. Well, fair enough, and you're arguing it, but it is not typical. Typically, when we're relying on prosecution history, we're relying on analytic affirmative statements. What you're asking us to do, right, is to take away from the fact that the silence of the examiner reached certain conclusions. Am I right about that? Well, yes, to some extent, but it's the give and take of the examiner and the patent applicant. What they were focusing on in these claims, except claim 19, which became patent claim 21, was features totally separate and distinct from any hinged connection. They all have back plates, they all have covers hingedly connected to them. You walk into a restroom, that's what you see. They're all the same. What was inventive here is what was pointed out separately and distinctly in each of nine claims. Only one of which, and it's the claim differentiation. You're rendering that Judge Dowd took the language, basically, from claim 21, and said that's how I'm going to interpret hinge everywhere that I see it in this patent. That renders the language in claim 21, another independent claim, superfluous. And the law is clear. We use different terms in different claims because they mean something different. And that's the reason I'm saying you need to look at this patent as a whole. Look at the features that they said, here's the problems with the prior art, and here's what we're going to do about them. And then you end up with nine independent claims going to those various features. Again, all of which, all of which except claim 21 that actually deals with the hinge, starts off with a face and a back plate, I mean a back plate and a cover, connected to said base. I'm getting the words mixed up there, but you're following me. I agree with you, Your Honor, that you go in there and say, oh yeah, they did, they focused. But they focused on a whole lot of features in this patent. The hinge was one, the bag retaining and pump support means, that was the feature of claim one that was patentable because we're getting rid of the bag in the box concept, and so we design inside here a bag retaining and support means, and pump support means. That was the novel feature. When I look at some of the figures that have been presented, especially in the brief, for example, figure 12,  I'm looking at this hook-like type hinge and not your traditional piano hinge, if that's what you'd like for me to see. Sure, you are, but also bear in mind the term here is hingedly attached. Now it's talking just about a type of attachment, a style of attachment, a method of attachment. We didn't, they're not claiming the hinge structure. This claim doesn't say a hinge. What this claim says is sort of the physical relationship between this back plate and this cover, and they are hingedly attached, like my jaw is hingedly attached, like the door is hingedly attached. That's all it says. And then it goes on to what the invention's about. And, you know, Judge Dowd, I've been before him 30-some years. He's 83 years old. He does a great job, but his law clerk, or he, I just think, blew it here. You want to reserve your interior. I'll do that. Thank you. Ms. Hopel?  May it please the Court. We believe that following Mr. Weber's logic of reading this entire patent in its entirety, that the Court should affirm Judge Dowd's ruling on the construction of hingedly attached. What about the claim differentiation? I think the claim differentiation argument, and certainly the argument that Mr. Weber has to make, but I think there are three problems with the claim differentiation argument. One, as we know from Curtis Rice, claim differentiation is most instructive to the Court in terms of an independent versus a dependent claim. And in this case, the argument is independent versus independent claim. Second of all, as the Court again in that case noted, claim drafters can and often do use the exact same language in different claims to describe and claim the exact same structure. And in this case, these claims aren't at issue, but in this case, a reading of Claims 6 and 26, which are both independent claims, would show that Claims 6 and 26 are identical in all respects. So I believe that we have a case here where claim differentiation isn't particularly instructive. And the last point of claim differentiation, again from the Curtis Wright case, is that claim differentiation can't be used to broaden the scope of claims beyond their correct scope. The correct scope being that scope which, one of ordinary skill in the art, reading the specification in its entirety would attribute to the claim terms. And in this case, from beginning to end, every figure, every description, in both the background of the invention and the description of the preferred embodiment, describes this hinge connection as unique. And, Judge Crouse, you said that you believed every... Is that enough, though, to support what could be arguably an importation of claim limitations from the specification into other claims? And as this Court has recognized, there's certainly a fine line between importing a limitation from the specification improperly into the claim and giving the patentee that which they patented, that which they invented, and that which they disclosed. And in this case, I don't believe it's an improper importation of a limitation from the specification because there is no reference anywhere in the four corners of this patent or in the prosecution history, which I believe is entirely silent on this issue, that the claimed attachment, the hinged attachment between the backplate and the cover, is anything other than that very specific, and it is very specific structure that Judge Dowd gave us as the claim interpretation. And by way of example, there is a description of a different hinge in the patent, which is the hinged attachment between the push bar and the cover. And that is described as being simply a simple hinge. And so the drafters knew how to distinguish between this unique hinge. Did the Court actually look at the prosecution history in the case? He did, Your Honor. The entire prosecution history was submitted with our opening claim construction brief. And at pages, I believe it's 11 and 13 of his claim construction opinion, which are not on the issue of hinged connection, he does cite and actually recite portions of the prosecution history in his claim construction order. So unless Your Honor has any more questions on hinged connection, I would move on to the pressure means argument. Is that your alternative argument? Yes. Our alternative argument is that the entry of summary judgment of non-infringement can be affirmed on the basis that the accused structure does not satisfy the claim term of pressure means, as Judge Dowd construed that term. That term was agreed by the parties to be subject to 112-6 construction. The parties agreed that the function of that pressure means limitation was actuating the pump of the invention. Are you asking that we do all of that finding up here? No, Your Honor. If we disagreed with you on the first question, we would just vacate and we may not. On the hinged connection, I'm sorry. Then there is no question of fact to be remanded and there should be an affirmance of the summary judgment. If that issue is remanded for further claim construction or different claim construction, we would say that the summary judgment of non-infringement could be affirmed on pressure means on a legal basis, which is that if the claim construction of pressure means is correct, which is that it is a hinged push or pressure bar with a frustaconical portion and its equivalent. If that claim construction is correct, then we believe that the record is sufficient to show that the symmetry device does not infringe that element of the claim as well. The reason is that under a 112-6 infringement analysis, you have to find identity of function. In this case, the record is undisputed between GOJO's expert declaration, which is in the record at A588 and A589, that the symmetry dispenser doesn't have a device on it that is capable of actuating the dome pump. That's literal. Under ODETIX and also the restaurant technologies case, which is 360 Federal Appendix 120, but ODETIX is a Presidential Opinion 185 F3 1259, the test is whether the relevant structure in the accused device performs the identical function and is identical or equivalent to the corresponding structure. That's the test to be applied to the 112-6 and its equivalent. So if there's identity of function, it's not equivalent function under a 112-6 analysis, it's identity of function. If there's no identity of function, then there can be no infringement under literal infringement or doctrinal equivalence by the symmetry device. And we believe that there is no additional facts to be developed on the record in that case, because again, even the plaintiff's expert agrees that the device that the accused device uses will not actuate the dome pump of this invention. If there are no more questions, I will concede the rest of my time. Thank you. Claim differentiation, of course, applies not only to dependent-independent claims, but the comparison of independent-independent claims. The Curtis Wright case stated that the claim differentiation tool, quote, takes on relevance in the context of a claim construction that would render additional or different language in another independent claim superfluous. It was talking about two independent claims, and what the district court... But in our case law, and I don't know the exact terminology, so I don't want to misstate it, our cases are clear that we use claim differentiation as a guidepost. It's nothing that would resolve or compel us to resolve the case in one particular way or another. No, I agree with that. I certainly agree with that, and I recognize that. It matters not if I agree with it, I recognize it. The prosecution history is silent about the hinge. And you know why? Because the hinge was never a feature of any of the eight claims that had to be prosecuted. The only claim that mentioned the hinge as an inventive feature was claim nine, that was 19, which was allowed as filed. So of course the prosecution history is silent with regard to the term. And counsel is correct that the prosecution history was complete and before judged out. I quoted it in my brief though, the court expressly stated that they did not consider, did not consider the prosecution history in ruling on the term, hingedly attached. I mean, you don't look at the entire patent, you don't look at all of the claims, and you just grab something and say, ah, yeah, they said that this hinge is inventive. Yeah, the hinge is inventive, but that isn't the hinge in all these other claims. And by the way, none of those claims claim a hinge. All they claim is hingedly attached, and any lay person knows that. Had the hinge been inventive, would we find statements or any type of arguments in the prosecution history? Had the hinge been inventive? Yes. Well, the hinge was apparently inventive because that's in claim 21, which was application claim 19, which was allowed as filed. And that's what I'm saying. Had the examiner looked at this term, hingedly attached, in the same context as claim 19 throughout, as the court has done, all those claims would have been allowed as filed. You know, it's mind-boggling to me. It's almost part of the preamble. They start off talking about, what do we got here? We got a face, and we got a cover that's hingedly attached. Now let me tell you what the invention is here. And it goes through nine independent claims telling you what the inventive features are. You know, it's easy, and I mean this in the nicest way, and I guess I'm talking about the profession itself. Because I've been doing this for 40 years. It's easy to go there and grab something and say, ah, yeah, well, they said this was inventive. So therefore, that's what this must be throughout. Well, you've got a case here where you've got seven declared inventive features. All of them in the environment of a cover hingedly attached to said backplate. But you can't stick the inventor and say all of your inventions that are even peripherally mentioned in a claim, all that structure is going to be used to define that term. I think we have your argument. I appreciate it. I appreciate your attentiveness to this.